AUGUSTUS C. SMITH *& al.* *vs.* BENJAMIN RICHARDS.

Where a draft is drawn by one upon another in favor of a third person, with-
out specifying therein the purpose to which it is to be applied, parol evi-
dence is admissible to show in what manner *the parties* understood the
money was to be appropriated.

But where the draft is accepted generally, the mere declarations of the acceptor
at the time of the acceptance, when the other parties were not present, are
not evidence of its appropriation to the declared object.

The conviction ought to be strong on the minds of the court that the jury
have fallen into some error in regard to the nature and force of the evidence,
before the court will interfere and grant a new trial.

ASSUMPSIT, declaring on a writing of which a copy follows.
                                        "*Bangor, July* 31, 1835.
"I hereby obligate myself to pay to *A. C. Smith* and *A. G.
Currier* fifty cents per acre for a lot of land bonded to me by them,
provided said land is sold by me, and fifteen dollars for the whole
if it is not sold.                              "*Benj. Richards.*"

On the trial before SHEPLEY J. the plaintiffs offered in evidence
the deposition of one *Stiles*, which was objected to as proving the
contents of a written instrument.    To remove this objection the

plaintiffs read an affidavit of one of them to prove the loss of the bond from one *Jordan* to the plaintiffs mentioned in the deposition, and which the deponent testified, had once been given by the plaintiffs to the defendant, and by him returned to them. The Judge admitted so much of the deposition as proved the fact that such bond had been given and returned, but excluded so much as went to prove the contents of the bond. *Jordan* was called by the plaintiffs, who testified, that they were to give him fifty cents advance per acre by a written contract between them which was cancelled and destroyed when the plaintiffs gave him a draft on the defendant, and that the defendant had told him he had sold the land, and that he and another person had made $1600 on it; that he was present when the plaintiffs asked the defendant, if he was going to take the land, and he replied that he should; and that he received his pay of fifty cents an acre from the plaintiffs by their draft or order on the defendant, and by him accepted and paid. To the testimony of *Jordan*, the defendant objected, but it was admitted. The exceptions state, that the defendant read in evidence a bond from one *Hopkins* to the witness, *Jordan*, and a draft drawn by the plaintiffs on the defendant, and by the defendant accepted, but the contents thereof do not appear in the exceptions. It seemed to be admitted on the argument, that the draft amounted to exactly fifty cents an acre for the quantity of land bonded. The defendant's counsel then proposed to prove, that at the time of his accepting the order, he was advised that it would be a payment of the sum due to the plaintiffs on the contract declared on, and that he accepted it, declaring it to be for such purpose, neither of the plaintiffs being present. This testimony was rejected. The jury were instructed, that if they were satisfied from the testimony, that the order was drawn and accepted in discharge of the contract declared on, they should find a verdict for the defendant. If they were satisfied, that the order was drawn for the purpose of designating the proportion of the money to be paid by the defendant to *Jordan* from that proportion of it to be paid to *Hopkins*, and that the defendant so understood it, then the payment being made to discharge a different contract from the one declared on, they should find in favor of the plaintiffs; and that in examining the testimony they might call to mind the language of the paper declared on,

where it speaks of a "lot of land bonded to me by them." The verdict was for the plaintiffs. The defendant excepted to the admission of the testimony objected to, and to the rejection of the testimony offered, and to the instructions of the Judge to the jury. There was also a motion to set aside the verdict as against evidence.

*Garnsey*, for the defendants, contended : —

That all the contracts are to be construed together. *Davlin v. Hill*, 2 *Fairf.* 435. The paper declared on was cancelled, and ceased to be obligatory on the defendant on the surrender by the defendant to the plaintiffs of the bond of the same date. *Stackpole* v. *Arnold*, 11 *Mass. R.* 27 ; *Kimball* v. *Morrill*, 4 *Greenl.* 368 ; *Haven* v. *Brown*, 7 *Greenl.* 421 ; *Wilson* v. *Hanson*, 3 *Fairf.* 58. The evidence offered by the defendant and rejected, should have been received, on the ground of its being a payment. The defendant has a right to direct the appropriation. 2 *Strange*, 1194 ; 2 *Caines*, 99 ; 3 *Caines*, 14. It should have been received as a part of the *res gesta*. *Pool* v. *Bridges*, 4 *Pick.* 378 ; *Carter* v. *Gregory*, 8 *Pick.* 65 ; *Allen* v. *Duncan*, 11 *Pick.* 308 ; *Milford* v. *Bellingham*, 16 *Mass. R.* 108 ; *Kimball* v. *Morrill*, 4 *Greenl.* 368. He also argued, that the instructions given were erroneous, and that a new trial should be granted, because the verdict was against evidence.

*Cutting*, for the plaintiffs, said the case was merely this. *Hopkins*, owning the land, gave a bond of it to *Jordan* at $3 an acre, *Jordan* assigned this bond to the plaintiffs, at $3,50 an acre, and they sold and assigned the bond to the defendant, at $4, the acre. The defendant then sold and assigned the bond to a third person at an advance, and received of him all above $3 per acre, and the purchaser gave up the bond to *Hopkins*, and took a title directly from him. The defendant then has his own profit, and that of the plaintiffs, and of *Jordan*, and now seeks to make the sum due to *Jordan* pay both him and the plaintiffs. The course taken by the Judge is too clearly correct to require either argument or authority to support it.

*Rogers* replied for the defendant.

The opinion of the Court was drawn up by

EMERY J. — If the exceptions in this case can be sustained, the motion for the new trial will become unimportant.

The bond from *John Hopkins* to *J. R. Jordan,* dated *July* 15, 1835, to convey to him certain lots of land, in *Ellsworth,* containing 837½ acres, for $2512,50 assigned by *Jordan* on the 20th of *July,* 1835, to *A. C. Smith* and *A. G. Currier.* On the 31st of *July,* 1835, they transfer it to *Benjamin Richards,* the defendant. Before that time, to wit, the 21st of *July,* 1835, the next day after *Smith* and *Currier* took the assignment from *Jordan* of *Hopkin's* bond, it would seem that the defendant had taken a bond of the plaintiff of the land in *Ellsworth,* at $4 per acre, running twenty days, leaving the plaintiffs the privilege to sell at that price, or an advance of it, before the expiration of the bond, in which case the defendant agreed to take the land at the price offered or give up the bond.

The paper sued, is dated the 31st of *July.* Preparatory to the admission of the deposition of *Augustus C. Stiles,* it became important to show the loss of a paper or bond once given by the plaintiffs to the defendant, by whom it was returned. In strictness the affidavit of the other plaintiff should also have been introduced to show the search for and loss of the bond. It was satisfactory to the Judge, to whose discretion the preliminary proof is intrusted. Previous notice to the defendant was not necessary, the paper having been returned to the plaintiffs.

We cannot discover any legal objection to the admission of *Jordan's* testimony. The reason of the draft being made in his favor was fairly a subject of parol evidence.

The proof proposed by the defendant's counsel to be offered of the defendant's declaration of the purpose of accepting the draft, in the absence of the plaintiffs, was rightly rejected. The defendant produces the draft and his acceptance, but in that acceptance is no statement making any qualification of its generality, nor any condition that it was or should be accepted in fulfilment of the contract now in suit. It really became then a question for the jury to settle, whether the draft was by both parties intended as a payment of the plaintiff's present claim. The instruction of the Court was calculated to draw the minds of the jury to the just and proper dis-

crimination. And they have by their verdict determined, that the draft was made, and payment was understood by the defendant as being made to discharge a different contract from the one declared on. And certainly we cannot think the remark that they might call to mind the language, " a lot of land bonded to me by them," in the contract in suit was calculated to mislead. It would not be going too far to say, that it partook of so much latent ambiguity, that the testimony might properly be weighed by them, as helping them to a proper conclusion. And it must be recollected that the defendant introduced the *Hopkins* bond.

The exceptions must be overruled. On the motion for the new trial, we do not perceive that the language of the Court was calculated to make an erroneous impression on the minds of the jury. The conviction ought to be strong on the minds of the Court, that the jury have fallen into some error in regard to the nature and force of the evidence, before the Court will interfere to grant a new trial. It is said, that all the evidence is now before us. If so, we cannot say that the verdict is against law, nor against evidence, nor against the weight of evidence. We are therefore constrained to overrule the motion for a new trial.