[No. 18558. Department Two.  January 9, 1925.]

FARMERS STATE BANK OF NEWPORT, *Respondent*, v. OLAF LAMON *et al.*, *Appellants*.[1]

BILLS AND NOTES (109, 132)—ACTIONS—PLEADING—ANSWER—EVIDENCE TO SHOW RELATION OF PARTIES. In an action on a corporation promissory note, executed by its president, signed also on its face by its vice president, individually, the latter's answer is insufficient to allege either a mutual mistake or fraud and states no defense, where it simply alleges that, through his inexperience, he neglected to affix his official title, pursuant to an agreement that he should sign only as such official of the corporation, and that plaintiff through fraud, accepted the note in such condition without comment; since the agreement would be a contradiction of the writing, and silence alone is not sufficient to constitute fraud, where no fiduciary relation exists.

Appeal from a judgment of the superior court for Pend Oreille county, Carey, J., entered January 26, 1924, in favor of the plaintiff upon the pleadings, in an action on a promissory note. Affirmed.

*F. E. Langford,* for appellants.

*E. T. Brigham,* for respondent.

MAIN, C. J.—The plaintiff brought suit upon a promissory note which was in ordinary form and which was signed, ''Diamond Lake Lumber Co., Arthur Cairns, Secy. & Treas., Olaf Lamon.'' The action was against Olaf Lamon and wife only. The answer of the defendants made certain admissions and denials and pleaded affirmatively as follows:

''1.  That on the 16th day of March, 1921, he held the office of Vice-President of the Diamond Lake Lumber Co., the maker of the promissory note referred to in plaintiff's complaint, and, as such vice-president, he, at the special instance and request of the plaintiff, affixed his signature to said promissory note for no other purpose than as vice-president of said corpora-

[1]Reported in 231 Pac. 952.

tion; all of which was then and there well known, understood and agreed to by the plaintiff.

"2. That he is a lumberman and rancher, and is possessed of very limited experience of banking and business usages and methods; and the drawing of negotiable paper; and by reason of such limited experience, he neglected and omitted to affix the words 'Vice-President' after his signature upon said promissory note to designate the official capacity in which he signed the same in accordance with the aforesaid agreement with plaintiff. That plaintiff knew of said omission at the time of the delivery of said promissory note, and knew that it was not in accordance with the aforesaid agreement, but notwithstanding its knowledge of said omission, for the purpose of defrauding and overreaching this defendant, it remained silent and accepted the delivery of said promissory note without comment."

The reply admits that Lamon held the office of vice-president of the Diamond Lake Lumber Company and denies the other allegations of the affirmative defense.

The plaintiff made a motion for judgment on the pleadings, which was sustained and a judgment was entered in favor of the plaintiff upon the note. The defendants appeal.

The question is whether the affirmative defense in the answer alleges matters which the appellants are entitled to show, even though they contradict the legal effect of the signature of Lamon to the note. The rule is well established that a written instrument cannot be contradicted by oral testimony, in the absence of a mutual mistake of fact, or fraud. The question then is whether, in the affirmative defense, there is pleaded either mutual mistake of fact, or fraud. Analyzing this defense, the appellants first say that the note was signed in pursuance of an agreement. If it was intended to allege that there was an agreement between the makers of the note and the payee that Lamon was to physically add the words "vice-president" after his

signature, then the further allegations of the defense disprove this allegation. If, as said, Lamon, on account of limited banking and business experience, neglected to add the words "vice-president" after his signature, this would indicate that there was no specific understanding between the parties to the instrument that those words should be so added. If the allegation be construed as an agreement that Lamon should only be bound as vice-president, then this would contradict the instrument and it would not be either a mutual mistake of fact, or fraud. The rule is, as stated in *Way v. Lyric Theater Co.*, 79 Wash. 275, 140 Pac. 320, that:

"   .  .  .   where the note purports to be the joint or joint and several obligation of a corporation and certain individuals, the latter cannot show that it was intended to create an obligation against the corporation only."

A case very much like the present one is that of *Toon v. McCaw*, 74 Wash. 335, 133 Pac. 469, L. R. A. 1915A 590, where it was held that the officers of a corporation who signed a note reading, "We" promise to pay, without stating in the note or signatures the manner or capacity in which they acted, were jointly personally liable and could not be heard to say that they signed only as officers of the corporation. In that case the note was signed, "Aberdeen Tug Boat Co., Thos. Willikson, Cash Manley, Swen Johnson." There was an affirmative defense in the answer which, among other things, alleged:

"   '   .  .  .   that said note was understood by all of the parties thereto, to be the note of said corporation; and the money was loaned on the credit of said corporation; that said defendants refused to indorse or sign said note in their individual capacity.' "

To the affirmative defense a demurrer was sustained, the defendants declined to plead further and judgment

was entered upon the note, from which they appealed. The opinion concludes as follows:

"The note imports a joint obligation of the appellants, and they have sought to plead and prove that, while they apparently executed the note in their individual capacity, they intended in fact to execute it as the note of the defendant corporation only. This would be to create an ambiguity where none exists and to make for the parties a contract which they did not make for themselves."

There is an allegation in the present case in the affirmative defense which was not in the affirmative defense in that case, to the effect that the respondent knew, at the time the note was executed, that it was not in accordance with the alleged agreement, but that notwithstanding this fact it remained silent, and it is claimed that this was fraud. In the absence of a duty to speak, silence as to a material fact does not of itself constitute fraud. In 26 C. J. 1069 it is said:

"Mere silence is not representation. In the absence of a duty to speak, silence as to a material fact does not of itself constitute fraud. Where, however, one actively conceals or deliberately suppresses the truth or fails to speak when it is his duty to do so he may be deemed guilty of fraud."

In *Opie v. Pacific Investment Co.*, 26 Wash. 505, 67 Pac. 231, 56 L. R. A. 778, upon this question it was said:

"The rule is laid down in 14 Am. & Eng. Enc. Law (2d ed.) p. 67, in relation to disclosure, that by the decided weight of authority the general rule is the same in equity as at law, and to the effect that mere non-disclosure or silence is not fraud, for the purpose of rescission or cancellation, in the absence of special circumstances imposing the duty to speak. Of course, if the circumstances surrounding the contract imposed a duty upon one of the parties to disclose all material facts known to him and not known to the other, want

of disclosure, with intent to deceive, will amount to fraud. The difficulty is not so much in stating the general principles of law, which are pretty well understood, as in applying the law to particular groups of facts. There are certain circumstances and conditions surrounding parties to contracts which bring them within the rule of duty to disclose, for instance, the relations of trustee and *cestui que trust,* principal and agent, attorney and client, physician and patient, priest and parishioner, partners, tenants in common, husband and wife, parent and child, guardian and ward, and many others of like character; but we find no cases holding that such a trust relation exists between the surety or indorser on a note and the principal as would raise the presumption of duty on the part of the surety to disclose to his creditor, and the surety is in no sense that we can comprehend a trustee for the creditor.''

Likewise, it might be said here that the respondent bank stood in no fiduciary relation to Lamon and it was not its duty to disclose to him that, if he did not add the words ''vice-president'' after his signature, he would be liable individually.

The judgment will be affirmed.

MITCHELL, PEMBERTON, MACKINTOSH, and FULLERTON, JJ., concur.