**NATHAN ROSENBLUM & CO v
C V HILL & CO Inc**

Ohio Appeals, 7th Dist, Mahoning Co

Decided June 24, 1938

Donald J. Lynn, Youngstown, for appellant.

Murray Nadler, Youngstown, for appellee.

## OPINION
By BENNETT, J.

This appeal involves the question of the validity of a chattel mortgage upon certain equipment furnished by appellant, C. V. Hill & Company to Hergets Home Food Stores, Inc., the mortgagor. The dispute lies between the receiver of the latter corporation and the owner of the mortgage.

The question raised is as to whether the mortgage and the affidavit filed therewith were adequate under the provisions of §8564 GC to prevail against creditors of the mortgagor whose interests were of course represented by the receiver.

This section reads as follows:

"The mortgagee, his agent, or attorney, before the instrument is filed, must state thereon, under oath, the amount of the claim, and that it is just and unpaid, if given to secure the payment of a sum of money only. If given to indemnify the mortgagee against a liability as surety for the mortgagor, such sworn statement shall set forth the liability and that the instrument was taken in good faith to indemnify against loss that may result therefrom."

The record discloses that the Herget corporation purchased this equipment through I Rosenberger, Jr., an individual doing business under the trade name of Lipman Refrigeration Company. Lipman was, in fact, acting as an agent for C. V. Hill & Company, the manufacturer and seller. The record does not show that the relationship between Hill and Lipman was discussed with the mortgagor or made known to it. The original quotation to Herget was made by Lipman and ripened into a contract with an acceptance signed "Herget's Home Food Stores, Inc."

The equipment was installed and an invoice rendered by Lipman. The chattel mortgage was then executed showing Lipman Refrigeration Company as mortgagee, although the notes secured thereby were

made to C. V. Hill & Company, Inc. as payee. The consideration recited in the first sentence of the mortgage reads "in consideration of $—— balance of purchase money due to Lipman Refrigeration Company, mortgagee." Beneath Lipman's name is printed the word "(seller)". The defeasance clause reads as follows:

"Provided, nevertheless, that if the said mortgagor and executors and administrators of mortgagor shall well and truly pay into said mortgagee and to the executors, administrators and assigns of said mortgagee the sum of $1,365, balance of purchase money evidenced by note of even date herewith, executed by the mortgagor, to the order of the mortgagee payable in equal consecutive monthly installments of $155 each and with interest from date payable monthly on unpaid balance at the rate of —% per annum with interest from maturity at the highest lawful rate, the first installment payable on the fourth day of October, 1936, then this mortgage is to be void, otherwise to remain in full force and effect."

The notes were not copied into the mortgage or referred to in it other than as above set forth.

The appellant's claim is that the Hill Company was at all times the beneficial owner of the mortgage. After its execution a formal assignment of the mortgage was made to Hill but this assignment was not filed with the recorder. The following affidavit, with notarial certificate was attached to the mortgage when filed with the recorder of Mahoning County:

"The undersigned makes a solemn oath and says that he is the treasurer of the within named seller; that the consideration of said instrument was actual and adequate; that the said seller has a valid claim against the within named buyer—Walter C. Herget —amounting to $1,365 balance due on purchase price of the within described property; that said claim is just and unpaid; that the within instrument was executed in good faith to secure the same and is not intended to defraud, hinder or delay creditors.

C. V. Hill & Company, Inc.
J. Townley Knotts,
Treasurer."

The granting clause of the mortgage recites that Herget Home Food Stores, Inc. (buyer) was the mortgagor. The mortgage is signed not in the corporate name but simply "Walter C. Herget, Pres." and it will be noted that the affidavit recites that the seller had "a valid claim against the within named buyer, Walter C. Herget."

We accordingly have the following claimed irregularities. The grantor in the mortgage is the Herget Corporation, the signature is simply Walter C. Herget, President, and the debtor set forth in the affidavit is Walter C. Herget personally. The mortgagee named in the mortgage is Lipman, no assignment from Lipman to Hill was ever filed with the recorder, Hill's name occurs nowhere in the mortgage, but the affidavit is signed by Hill & Company by its treasurer, the mortgage says Lipman was the seller, and the affidavit says that Hill was the seller. Nothing in the recorder's office at the time of receivership showed the reason for these discrepancies.

We deem the signature to the mortgage to be adequate to make it the mortgage of Herget's Home Food Stores, Inc. and believe that the mortgage itself is sufficient to give notice to third parties of the claimed mortgage interest in the property in question of that corporation.

**Sheehan v Davis, 17 Oh St 571.**

However, §8560, GC, provides that chattel mortgages, without change of possession of the chattels, "shall be absolutely void as against creditors" unless the filing provisions are complied with, and §8564, GC above quoted, provides that the filed document must contain the requisite affidavit.

The statutory purpose of this affidavit as set forth in several Ohio cases is to prevent debtors from making and recording chattel mortgages which were not in fact security for bona fide obligations, with the purpose of hindering their real creditors in making collections against them. The statute "subjects the conscience of the party to the severe test of an oath as to the amount and justice of his claim to be secured by the mortgage. * * * Where the oath is in fact taken and certified by the officer on the mortgage, the affiant may, in addition to the exposure of his fraud, be prosecuted for perjury." **Benedict v Peters, 58 Oh St 527, 534.**

So far as artistic or accurate draftsmanship of these papers is concerned, just about as many irregularities and imperfections exist in them as could well be found. The question which we have to decide is whether or not there has nevertheless been substantial enough compliance with the provisions of §8564 GC to make the lien of the

Hill Company good against the claims of creditors represented by the receiver.

The appellant relies primarily upon the case of Wells v Rutkowski, 69 Fed. (2) 143. This was a case between the trustees of a bankrupt corporation and one claiming a chattel mortgage interest in some of its chattel assets. The mortgage and mortgage notes were executed by the corporation C to A. as mortgagee, but the affidavit. signed by J, recited that one C was indebted to J and that the claim in the amount of $15,-000 was just and unpaid. The writer must confess that under the facts of that case, as recited in the opinion, he is inclined to agree with Judge Hickenlooper's dissent. It is not clear to me what statutory purpose would be effected by supporting a mortgage from C to A by an affidavit that C owed J some money and by then explaining away the inconsistency at the trial by saying that the affidavit was in fact untrue.

The appellee in the case at bar says that the appellant's case is weaker than that of the mortgagee in the Wells case because of the evidence in that case that the maker of the affidavit was in fact acting as an agent for the mortgagee, while in the present case the mortgagee named in the mortgage was the agent and the affiant was the principal. We do not believe that this distinction hurts the case of the appellant and believe also that there are other distinctions which make the appellant's claim in the instant case stronger than that of the mortgagee in the Wells case, notably the fact that the affidavit in our case spoke the truth relative to the matters required to be in it.

The requirements of §8564 GC are that the bona fides of the mortgage be supported by an affidavit under oath (1) made by the mortgagee, his agent or attorney, stating (2), the amount of "the claim." and (3), that it is just and unpaid.

The record is clear that, while the mortgage was made to Lipman as mortgagee, Hill & Company, Inc. was the beneficial owner from the beginning and has been given a written assignment of it which has not been recorded. There is no affirmative provision in our chattel mortgage statute for recording or filing assignments and we take it that the failure to record or file the assignment is, therefore, immaterial so far as the sufficiency of the record is concerned. The mortgage, as filed, is notice to the world of the existence of a mortgage claim against these chattels and the true party in interest may show his in-

terest in any litigation in which it is involved. As to a similar situation respecting real estate mortgages before the statute providing for record of assignments was enacted, see Holliger v Bates, 43 Oh St 437, 27 O. Juris., Mortgages, §240 et seq. And even now, in the case of real estate mortgages, the only type of situation in which the record of an assignment is crucial is one in which the assignor, the apparent owner because of failure to record the assignment, either releases the mortgage or deals respecting it, or is made party to a foreclosure action when the assignee is not made a party. In these instances all third parties can rely on the face of the record. But there is no prejudice to any creditor or to the receiver in the present case growing out of the personality of the owner of the mortgage or the fact that a searcher of the record would believe that Lipman, not Hill, was the owner of the lien. The only thing that would be of importance as a matter of notice, is the fact that a searcher of the records would learn that someone had a lien against these chattels. The question of who had this mortgage preference would be unimportant to creditors unless some action was taken which depended on that difference.

Our conclusion is that the failure to record the assignment was unimportant as respects notice to creditors of the existence of the lien.

Did it make any difference as to the signature on the affidavit? We believe not. The requirement of the statute is that the affidavit be made by the mortgagee, his agent or attorney. The human agency was the treasurer of the Hill Company, which corporation was in fact the mortgagee. Careful drafting of papers, of course, would have shown the connection, but we find no affirmative requirement that this link in the chain be shown and we believe that it is sufficient when the affidavit is made by an agent of the actual mortgagee, even though the recorded mortgage appears on its face to belong to another.

The further requirement of the affidavit is that it state the amount of "the claim" and that it is just and unpaid. Now, remembering that the purpose of the requirement is to prevent filing of purported mortgages which in fact secure no bona fide obligation, and remembering that this purpose is to be achieved by requiring the affidavit of the holder which will both rest upon his own conscience and will lay him open to a perjury indictment if he files one which is not true, we believe that

neither the substance nor the letter of the statute requires that the affidavit state the person by whom the debt is owed. Mortgages may be given to secure debts of others than the mortgagor. All that the statute requires however, is that the affidavit state the "amount of the claim," which we construe to mean the amount of the claim secured by the mortgage, and the fact that it is a bona fide claim and unpaid. The affidavit in the instant case says that a "valid" claim exists "amounting to $1,365" which "is just and unpaid" and "that the within instrument was executed in good faith to secure the same."

The affidavit, however, is incorrect in the statement that Walter C. Herget was the buyer. We deem this surplusage to be immaterial for Herget was in fact personally liable upon the notes for the purchase of the equipment. Whether this was done deliberately or through inadvertence we do you know, but the notes issued in payment for the Youngstown equipment, all read, "I, we, or either of us, promise to pay * * *" and are signed "Herget's Home Food Stores, Inc.," and, "W. C. Herget," on the line below the name of the corporation.

Herget was clearly liable personally on these notes. Not only is there no evidence to the contrary in the record but if such evidence had been offered it would have been inadmissible.

**Huron County Banking Company v Oberlin Co., 19 O.C.C. (N.S.) 151.**

See Farmers' State Bank of Newport v Olaf Lamon, 42 A.L.R. 1075, 231 Pac. 952, 132 Wash. 369, and note in the A.L.R. Report; and

Coal River Colleries v Eureka' Coal & Wood Co., 46 A.L.R. 496, 132 SE 337.

We accordingly believe that the affidavit contained all the elements required by the statute, that it was true in these essential statements, that it was made by the owner of the mortgage. We deem it immaterial that the affidavit wrongly' said that Hill was the seller and Walter C. Herget the buyer. These incorrect statements as to unessential surplusage were neither fraudulent nor deceived anyone to his detriment. And the affidavit did contain a truthful statement of the fact required by the statute, that the mortgage was a bona fide security for a debt of Walter C. Herget that was just and unpaid. We deem it immaterial that the affidavit did not further add that the debt was also a debt of Herget Home Food Stores, Inc.

We accordingly feel that the appellant's Youngstown mortgage should have been sustained. The judgment below as to that mortgage is reversed and final judgment protecting the interest of the mortgagee will be rendered. The judgment as to the Columbiana mortgage is affirmed.

Affirmed in part, reversed in part.

CARTER, J, dissents.